## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY NUZZO<br>        *Plaintiff*,<br><br>        v.<br><br>MARK DEVINE *and* MATTHEW<br>WARREN,<br>            *Defendants*. | No. 3:18-cv-00516 (JAM) |

### MEMORANDUM OF DECISION

Plaintiff Jeffrey Nuzzo filed this civil rights action against defendants Sergeant Mark Devine and Trooper Matthew Warren of the Connecticut State Police. He seeks to hold them liable for the use of police dogs to attack him when he was arrested in October 2015. The matter proceeded to a bench trial before me, and I now issue this ruling concluding that Nuzzo has fallen short of proving his claim for excessive force against either defendant. Accordingly, I will grant judgment to the defendants.

### BACKGROUND

The trial of this matter included testimony from the plaintiff and both defendants. The defendants also called as witnesses four state troopers: Robert Lanteri, Nicholas Leary, Donald Dunning, and Jonathan Naples. Trial exhibits included numerous photographs and hospital records reflecting the treatment of and statements by Nuzzo following the incident at issue. Doc. #39.[1]

---

[1] Because the parties have not ordered trial transcripts, I set forth the following version of events on the basis of my recollection and trial notes. The parties should timely file a motion for reconsideration if they believe I have erred in my recitation and findings of fact.

At the time of the incident, Nuzzo was a self-employed construction worker who primarily worked for music festivals. He was married and lived with his spouse and two young children in Durham, Connecticut. Shortly before the incident at issue, Nuzzo suffered a serious professional setback when a music festival for which he was working lost a considerable sum of money. This development exacerbated Nuzzo's fragile mental health condition, and it led him to believe that his life was in danger at his home from unnamed "mob" persons connected with the festival.

By late afternoon on October 13, 2015, Nuzzo's mental health condition had deteriorated to the point that—after drinking a few glasses of wine—he shaved his beard, dressed all in black, and took out a range bag of weapons. One of Nuzzo's family members called the police for a "welfare check." The police duly arrived, found Nuzzo lucid and nonthreatening, cautioned him not to drive while intoxicated, and then departed.

But events soon took a turn for the worse. Nuzzo believed that he was in imminent danger, and he threatened suicide, cutting his wrist with a large knife, and leaving blood spatters on the floor. This prompted a second call to the police from Nuzzo's parents, who had overheard a substantial part of Nuzzo's exchange with his wife, including a threat by Nuzzo to burn down the home.

Two state troopers arrived shortly before midnight. In the meantime, Nuzzo decided to hide from the police by crawling out an upper floor window onto the roof of the house. The troopers searched the house and surrounding area, but they did not know where Nuzzo was. They saw the bloodied knife, and found a trail of blood that led into the back yard to a sword sticking into the ground.

The troopers summoned backup, including among others the two defendants whom Nuzzo has sued in this action—Sergeant Mark Devine and Trooper Matthew Warren of the Connecticut State Police. They and the other responding officers learned that Nuzzo had threatened to harm himself and others. The responding officers concluded that Nuzzo must be at large in and around the woods surrounding the relatively rural setting of the Nuzzo house.

Sergeant Devine called in a search-and-rescue unit. Testimony from troopers at trial reflected concern at the time that Nuzzo was mentally unstable, that he had access to a diversified array of weapons (from guns to swords), and that there was a local school within a short distance of his house where children would arrive for the school day come daybreak in a few hours.

Teams of troopers with canine assistance searched the surrounding area for hours through the night. Sergeant Devine eventually enlisted the assistance of a state police helicopter for aerial reconnaissance.

All this time Nuzzo watched the escalating police activity from the roof. He sent text messages to his wife informing her that, if the police did not leave, he would blow up the house, or walk outside and attempt so-called "suicide by cop." Nuzzo's wife immediately forwarded the texts to the police, who circulated each message to all of the officers involved in the Nuzzo search.

Several hours passed before Nuzzo finally re-entered the house from the roof. Outside the house Trooper Lanteri saw Nuzzo inside and promptly radioed the search and rescue units to converge on the house. Nuzzo called the police barracks to report that he wished to surrender. He was told to leave the house without weapons or anything that could be seen as a weapon, and that he should slowly exit the house while staying on the phone with the officer.

3

The police did not know just where or how Nuzzo would leave the house. As can be seen from the photograph below, the evening was pitch-black; the photograph below is illuminated by the camera flash, but the house itself was almost totally dark and shed little light on the yard.



Nuzzo left the house through the front door. The troopers were deployed on all sides of the house. Two of the troopers were trained canine handlers and had their dogs with them outside the house. Trooper Leary had his dog "Elvis," and Trooper Naples had his dog "Ido."

The parties dispute what happened next, and I will start with describing Nuzzo's version before describing the defendants' version. According to Nuzzo, he left the house while holding his phone to his ear. When he saw that the troopers at the front of the house had their guns drawn, he dropped the phone and put his hands as instructed where the troopers could see them.

4

The police—including the two defendants—ran up the steps toward him on the small porch where he stood, and they grabbed him by his arms and legs. They carried him down the steps and into the yard, all the while Nuzzo was prone, unresisting, and calmly telling the police to relax. While Nuzzo lay on the ground with his hands above his head, he heard the troopers order the dogs to attack him. The dogs allegedly savaged Nuzzo as the police held him down, and only then were the dogs withdrawn, and Nuzzo was handcuffed.

According to Nuzzo, Sergeant Devine and Trooper Warren took part in holding him down while the dogs attacked. He did not testify that they were the dogs' handlers or that they commanded the dogs to attack him. Nuzzo faults Sergeant Devine and Trooper Warren for failing to intervene to prevent the dogs from attacking him.

The testimony of the defense witnesses told a very different story: Nuzzo left the house and then came down the front steps, walking down and to the left to approximately the location of the exhibit sticker in the photograph above. As Nuzzo descended to the yard, the troopers around the back of the house, including Sergeant Devine, rapidly moved from the back and sides of the house to the front lawn. Nuzzo failed to drop down as commanded by the troopers to do.

From his vantage point just behind the bushes on the right front of the house, Trooper Leary saw that Nuzzo was not obeying the commands to get down and appeared to be holding an object in his right hand. Trooper Leary decided to take advantage of the element of surprise, rapidly closing in on Nuzzo and deploying his dog Elvis to secure him. Elvis leaped and bit Nuzzo in his upper pectoral muscle. Almost simultaneously, Trooper Naples—who was on the other side of Nuzzo—decided to deploy his dog Ido, and Ido bit into Nuzzo's lower left side.

According to the defense testimony, Nuzzo fell to the ground in a struggle with the two dogs. As the dogs deployed, Sergeant Devine and Trooper Warren closed in on Nuzzo to secure

him. After Trooper Leary saw that Nuzzo was prone, he disengaged Elvis and attempted to hold Elvis to heel. But Trooper Naples did not disengage Ido, because he believed Nuzzo had a weapon of some sort. Ido continued to bite into Nuzzo's lower back area.

By this time, Nuzzo had fallen on his front, tightly tucking his arms underneath him with his fists balled, rocking from side to side. Because Ido continued to maintain his hold on Nuzzo, his rocking resulted in tearing wounds on his lower back. Trooper Naples testified that police dogs are trained to bite and hold, and therefore to re-bite if the suspect moves in order to maintain a hold.

Only after the officers were able to secure Nuzzo's arms and hands for cuffing did Trooper Naples direct Ido to disengage from Nuzzo's body. During the fracas, Elvis bit one of the other police troopers who was trying to secure Nuzzo. According to the defense testimony, Nuzzo did not stop resisting until his wrists were handcuffed.

The parties broadly agree about what happened next. Nuzzo was taken by ambulance to Middlesex Hospital, where he remained for 12 days for treatment of his dog bites and his mental condition including bipolar disorder. Nuzzo told the officers that he intended to file a lawsuit for their use of the dogs against him.

### FINDINGS OF FACT

Because this is a civil lawsuit, my role is to decide if Nuzzo has carried his burden to prove the facts of his case by a preponderance of the evidence. Having considered in full all of the testimony and exhibits, I adopt as findings of fact those events recounted above upon which the parties agree and—as to the disputed facts—those facts as adduced by the testimony of the defendants and their witnesses. In light of Nuzzo's bizarre conduct and state of mind on the night in question, I do not have confidence in his account relating to what happened when he left his

house and was allegedly subject to a gratuitous use of canine violence by the police. I conclude

that Nuzzo did not immediately surrender to and follow the commands of the police officers after

he left the house.

I credit the testimony of Troopers Leary and Naples that they instructed their dogs to

secure Nuzzo only after Nuzzo did not respond to police commands. Although Nuzzo contends

that a photograph (Exh. 5) showing a dog bite in his armpit supports his claim that he was prone

with his arms above his head when attacked, a bite in the armpit is equally consistent with the

defense account that one of the dogs (Elvis) attacked him while he was still standing and before

he was brought to the ground and his arms tucked underneath him. *Contrast Rinaldi v. Laird*,

2016 WL 4179837, at *5 (D. Conn. 2016) (finding defendant liable for excessive force where

photographic evidence contradicted the defendant's testimony). I likewise credit the testimony of

Sergeant Devine and Trooper Warren that they did not instruct the dogs to attack Nuzzo and that

they were not aware of facts to suggest that the use of the dogs to secure Nuzzo was unnecessary.

## CONCLUSIONS OF LAW

The Fourth Amendment protects the rights of the people "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV.

Because the Fourth Amendment protects against unreasonable seizures, it has long been

recognized that the Fourth Amendment is violated if the police use excessive force against a free

person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.,*

*Graham v. Connor*, 490 U.S. 386 (1989).

As the Supreme Court has explained, whether police officers' use of force is "excessive"

must be judged by "whether the officers' actions are objectively reasonable in light of the facts

and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

at 397. A court must give "careful attention to the facts and circumstances of each particular

case," including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid*. Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *see also Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (same).

In light of this framework, I conclude that the facts as proven do not establish that the police used excessive force. In light of what the police knew about Nuzzo, the fast-moving sequence of events, and what Troopers Leary and Naples reasonably believed when they instructed their dogs to secure Nuzzo, it was not objectively unreasonable for them to believe that the deployment of the dogs was appropriate to ensure the apprehension of Nuzzo and without increasing a risk of injury to police officers. Nor was the length of time that the dogs were deployed on Nuzzo objectively unreasonable. One of the dogs (Elvis) was very promptly disengaged from Nuzzo. The other dog (Ido) remained with a bite hold for a longer time but not an unreasonably long time in light of what Trooper Naples perceived to be ongoing resistance by Nuzzo.

In any event, even if I were to conclude that either Trooper Leary or Trooper Naples engaged in an excessive use of force by means of their deployments of the dogs, Nuzzo has not named them as defendants in this action. Nuzzo instead has only named Sergeant Devine and

Trooper Warren as defendants despite the absence of any evidence that either one of them instructed the dogs to attack Nuzzo or that either one of them knew in advance that another trooper would deploy their dogs against Nuzzo as they did.

Because Sergeant Devine and Trooper Warren had nothing to do with instructing the dogs to secure Nuzzo, they may be liable only if they failed in their constitutional duty to intervene to prevent the use of excessive force. In other words, Nuzzo must show not only that he was subject to the use of excessive force but also that Sergeant Devine and/or Trooper Warren failed to intervene despite being on notice that the force being used was excessive and having a "realistic opportunity" to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

In view of what was known about Nuzzo's unbalanced, evasive, and threatening conduct, as well as the rapid course of events once Nuzzo left the house in very dark lighting conditions, I am not convinced that Sergeant Devine or Trooper Warren knew or should have reasonably been aware that it was excessive for the dogs to be deployed on Nuzzo or to hold their positions on Nuzzo as long as they did. Accordingly, even assuming the use of excessive force by other officers, the evidence does not show that the failure of Sergeant Devine and Trooper Warren to intervene amounted to a violation of the constitutional right of Nuzzo to be free from the use of excesive force.

The facts here are distinguishable from other cases that allow liability against a police officer who fails to intervene to prevent another officer from using a dog to engage in excessive force. For example, in *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000), the Eleventh Circuit held that a police officer should have intervened when he was standing nearby and watched a junior officer's threat to deploy his dog on the plaintiff and his actual deployment of the dog on the plaintiff for an excruciating two minutes. *Id.* at 924-25; *see also Mendoza v.*

*Mclean*, 2016 WL 3542465, at *5 (S.D.N.Y. 2016) (denying summary judgment where evidence suggested officer "should have perceived the use of force" involving police dog was "excessive" and where officer "had the opportunity and sufficient time to stop it, yet he allowed it to continue").

One last point. Defendants have argued that Sergeant Devine and Trooper Warren had no legal authority to second-guess the dog handlers' decisions about when and how to deploy their dogs. I reject this argument. There is no "act of dog" exception to a police officer's constitutional duty to refrain from the use of excessive force and to intervene if others do so. The rules are no different because the police decide to use a dog rather than another means of force. Nevertheless, for the reasons explained above, I conclude under the particular circumstances here that it was not unreasonable for Sergeant Devine and Trooper Warren to refrain from intervening in the use of the dogs against Nuzzo.

### CONCLUSION

On the basis of all of the evidence and arguments, I conclude that plaintiff Jeffrey Nuzzo has failed to prove by a preponderance of the evidence that defendants Sergeant Mark Devine and Trooper Matthew Warren should be liable to him for the use of excessive force in violation of the Fourth Amendment. Pending motions (Docs. #36 and #49) are DENIED as moot. The Clerk of Court shall enter judgment in defendants' favor and close this case. It is so ordered.

Dated at New Haven, Connecticut, this 14th day of October 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

10